Parker, J.
The first question naturally arising in this case, and to be first decided, is whether the instrument of writing executed by Edrington, purporting to emancipate Lavinia the mother of the defendants in error, which is dated the 21st of October 1817, and was recorded in the corporation court of Staunton on the 17th of the next month, be or be not made in pursuance of the act of assembly, 1 Rev. Code, ch. 111. ^ 53. p. 4:33.
*513 The objection is, that it is not a sealed instrument; and by the act it is only made lawful “ for any person, by his or her last will and testament, or by any other instrument in writing, under his or her hand and seal, attested and proved in the county or corporation court by two witnesses, or acknowledged by the party in the court of the county where he or she resides, to emancipate and set free his or her slaves.” This act, it is conceded, must be strictly complied with, and to effect emancipation, the instrument must be under the seal of the grantor.
That under which the plaintiffs in error claim, is in the common form of deeds of emancipation, beginning “Know all men by these presents,” and signed by Edmund Edrington, with a scroll annexed, in which the word seal is written. It is subscribed by two witnesses, who certify that it was signed, sealed and acknowledged in their presence, and upon their evidence it was duly admitted to record; but it conclues, “ In testimony whereof I have hereunto set my hand this 21st day of October 1817,” without saying, in the body of the instrument, any thing about a seal.
If the instrument, having a scroll to it, had been acknowledged in court by the party (as the act allows) instead of being proved by the witnesses, I think there could have been little question that it would have been a sufficient recognition of the scroll as a seal, to give it the force and obligation of a sealed instrument. All that is required by the common law, or by our act of assembly, is, that the impression in the one case, or the scroll in the other, should be added with intent to seal; and if the party shall acknowledge before the court an instrument having a scroll, as his act and deed, nothing more can be required. The act of 1788, which our courts have decided to be in affirmance of the common law of Virginia (Jones & Temple v. Logwood, 1 Wash. 42. Buckner v. Mackay, 2 Leigh 488.) declares that *514 << any instrument to which the person making the same shall affix a scroll by way of seal, shall be adjudged and holden to be of the same force and obligation as if it were actually sealed.” It would be in derogation of that act, to decide that a scroll, affixed with the view of perfecting an instrument required by law to be under seal, and acknowledged by the party in court with the intent of complying with the law, was not a seal, because it was not called such in the body of the instrument ; and it would be equally unreasonable to predicate the same thing of an instrument proved by witnesses who attested the sealing as well as the signing and delivery. The common law does not require that the party should any where in the instrument speak of a seal, but only that it be sealed, and the sealing proved. In Sheppard’s Touchstone, a book of the highest authority, it is said (vol. 1. p. 55. Atherly’s edi.) “ A deed is good, albeit these words in the close thereof, in cujus rei testimonium sigillum meum ayposui, be omitted, and albeit there be no mention made in the same that the deed was sealed and delivered; so in truth it be duly sealed and delivered, and the sealing and delivery be proved.” Here, then, is an express authority that the proof of a seal is sufficient, although no mention is made of it in the body of the instrument; and as scrolls are placed by our law on precisely the same footing as seals, when affixed by way of seal, I take it to be clear law that a scroll may be proved to have been so affixed, without mention of it in the body of the instrument. The true doctrine is stated with great clearness by chief justice Tilghman in the case of Taylor v. Glassel, 2 Serg. & Rawle 504. “ There are two principles,” says he, “ well founded: one, that although in the body of the writing it is said that the parties have set their hands and seals, yet it is not a specialty unless it be actually sealed and delivered: another, that if it be actually sealed and delivered, it is a specialty, although no mention be made *515 of it in the body of the writing. The fact, and not the assertion, fixes the nature of the instrument.” Thus, to constitute a sealed instrument, there must be a seal or scroll affixed, and some recognition of it in the instrumerit, or some evidence of it aliunde; but it can never be maintained that such evidence, whether by the proof of witnesses or acknowledgment of the party, will not supply the place of such recognition. If the maker says merely, “ witness my hand;” if the attestation of the witnesses takes no notice of the sealing; if there are expressions in the instrument not usually found in deeds, but common in simple contracts, as if it commence “For value received I promise” &c. all these are circumstances (and there may be others) affording strong presumptive evidence that the party did not intend to bind himself by deed, and has not so bound himself. When some of these circumstances exist, and especially when all concur, they may outweigh the mere circumstance of a scroll being annexed, which might be so easily placed there after the execution of the writing ; but this presumption, like any other, may surely be rebutted by proof of the fact that the scroll was annexed by way of seal, and by the maker. Thus, suppose he says at the time, “I affix this scroll as my seal,” or within the scroll he writes the word “ seal,” and then delivers it as his deed; I am at a loss to conceive how any court or jury could resist the conclusion that it was a sealed instrument.
It is said, however, that the decisions in this court are inconsistent with this opinion: and there may be some loose expressions to be found in them, giving countenance to the objection. But when the cases themselves are carefully examined, I am persuaded they will not be found to support it. They are the following: Baird v. Blaigrove, 1 Wash. 170. Austin's adm'x v. Whitlock's ex'ors, 1 Munf. 487. Anderson v. Bulloch &c. 4 Munf. 442. Jenkins v. Hurt's commis *516 sioners, 2 Rand. 446. Peasley v. Boatwright, 2 Leigh it i rn 1 195. and a late case not yet reported.* These cases, except the last, I have critically scanned; and by giving the facts of each, with the opinions of the judges, it would be easy to shew that they do not exclude proof almnde of the sealing of the instrument. But this would swell my opinion to an inconvenient length; and I must content myself with a few general observations respecting their scope and effect. In all of these cases the writings purported to be signed only. They had either no attesting clause, or it was merely in the form “ Teste A. B. &c.” without noticing the sealing. In most of them a consideration is expressed; a circumstance unusual, as the judges say, and unnecessary in specialties, but common in simple contracts of the character of those in question. In none of them was the instrument such as the law required to be recorded, or such as it made available only when sealed ; and in not one was there any proof that the instrument had been actually sealed, or scrolls annexed by way of seal. The court had to judge by inspection of the paper, and by inspection only; and the judges say that as in its beginning, conclusion and attestation, no mention is made of its being sealed, and the fact is not otherwise proved, but rendered improbable by other circumstances, the mere accident of a scroll being found was insufficient to shew it was affixed by way of seal, when possibly it might have been added by inadvertence, or afterwards by the holder. Judge Tucker, indeed, in the case of Austin’s adm’x v. Whitlock’s ex’ors, goes somewhat farther; but his observation was not necessary to its decision, since no evidence dehors the instrument was offered, and the case did not turn upon it. The instrument concluded “ witness my hand,” and the attesting witness, who was then dead, had not attested its sealing.
*517 The case referred to as lately decided and not yet reported may have gone somewhat farther, and (as my judgment in the court below was reversed) I may think, too far. But, as well as I recollect its circumstances, the only one which distinguished it from the previous cases, was the fact that the word seal was written within the scroll. But there were no attesting witnesses, and no proof that the word seal was written by the maker of the note; and as the judges present who decided it assure me there is nothing in their opinions affecting the present question, I do not feel myself trammelled by it.
Assuming, then, that an instrument of writing, not stated in the body of it to be sealed, may, if it have a scroll, be proved to be a specialty by attesting witnesses to its sealing, notwithstanding it concludes 11 witness my hand,” the next enquiry is, whether it appears by this record, that the scroll was affixed by Edrington as his seal ?
The attesting clause (which is a part of the instrument necessary under the act of assembly to the validity of the instrument, unless it is acknowledged in court by the grantor) purports that it was sealed as well as delivered; and it was proper that mention should be made, by way of attestation, of such sealing and delivery. Sugden on Powers, p. 237. On the proof by the oaths of these witnesses, the deed was afterwards ordered to be recorded. It could not have been legally admitted to record as an instrument of emancipation, unless the witnesses swore that it was sealed, as well as acknowledged and delivered, in their presence. These circumstances amount at least to jrrima facie evidence that the instrument was duly sealed, and greatly outweigh the single presumption arising from the fact that no notice is taken of it in the body of the writing. A much stronger case is stated by Sugden, in his treatise on powers, p. 236. where he says, on the *518 authority of lord Eldon, that “ if, in the attestation of an instrument, it is stated to have been sealed in the presence of witnesses, it will, in the absence of evidence to the contrary, be presumed to have been sealed, although no impression appear on the parchment or paper.” Here, besides the attestation, something equivalent in general to an impression in wax does appear; to wit, a scroll.
Doubtless, Edrington intended to make this instrument of writing conform to the act of assembly. It does so in all other particulars; and the witnesses to it declare that it conformed also in the requirement of sealing. This of itself would distinguish this case from all others which have come under the consideration of the court of appeals, and leaves no doubt on my mind that the court below was right in regarding the instrument as a deed of emancipation duly executed.
On the other questions presented by the record, I coucur entirely in the views taken by the president, and in the conclusion to which he arrives on the whole case.
Brockenbrough, J.
The emancipation law enacts that a master may emancipate his slave by an “instrument in writing, under his hand and seal, attested and proved in the county or corporation court by two witnesses, or acknowledged by the party in the court of the county where he resides.” The statute respecting seals says, “ any instrument to which the person making the same shall affix a scroll by way of seal,” shall be adjudged to be a sealed instrument.
The current of decisions in this court is, I think, that the mere annexation of a scroll will not make it a sealed instrument, but if it shall appear, either from the body of the instrument itself, or from the clause of attestation, that the scroll was affixed by way of seal, it is then a sealed instrument. Although that clause is no part of *519 the instrument, yet as it is written on the same paper, if it appear from it that the scroll was affixed by way of seal, it is just as good as if the obligor had in the instrument itself declared it to be a seal. In Baird v. Blaigrove, the agreement had a scroll opposite to each signature: the conclusion was “as witness our hands," and the attestation simply “ teste;" neither spoke of the instrument being sealed. President Pendleton said, “ The court are not satisfied that this is to be considered as a sealed instrument. It is in no part of it expressed to be sealed. The attestation is the same as in common simple contracts not under seal.” The irresistible inference is, that if the attestation had been in different form—if it had recognized the seal, it would have been sufficient.
That position is also to be deduced from the opinions of the court, and particularly from that of judge Roane, in Austin's adm'x v. Whitlock's ex'ors, 1 Munf. 487. I am satisfied that it is in no manner impugned by the case of Cromwell v. Tate's ex'or, not yet reported.*
In the case before us, the instrument is signed by Edrington, and has a scroll annexed to his name, in which is written the word seal; but as he does not, in the body of the instrument, speak of it as a seal, this would not do. But the clause of attestation is not simply “ teste," as in the two cases above mentioned, but is written thus, “ Signed, sealed and acknowledged in presence of us Alcx'r R. St. Clair, Walter U. Tapp;" and on the evidence of the subscribing witnesses it is admitted to record as an instrument emancipating the slave Lavinia and her four children. It was, then, an instrument under Edrington's hand and seal, as much as if he had placed there a seal of wax.
The next question arises from the proviso, which says that all slaves so emancipated shall be liable to be ta *520 ken by execution, to satisfy any debt contracted by the person emancipating them, before such emancipation is made.
Admitting that the debt for which the plaintiffs in error were taken in execution was contracted by Edrington to Paries before the instrument of emancipation was executed (which, however, does not clearly appear from the special verdict) still the question arises whether the afterborn children of the freedwoman can be taken in execution. On the principle that the child follows the condition of the mother, and that the mother became absolutely free by the instrument of emancipation, subject only to the contingent liability of being taken in execution for prior debts, I am of opinion that the plaintiffs in error, being born free, were not liable to be reduced to slavery. On this point I refer to the opinion of the president, in which, and the grounds on which it is founded, I entirely concur.
I am of opinion that the judgment be affirmed.
Cabell, J.
I have carefully examined all the reported cases as to scrolls annexed to deeds by way of seals; and I am perfectly satisfied that this case is materially different from all of them. There is a fact in this case, which is not to be found in any of the former cases. In the attestation by the subscribing witnesses, they expressly state that the instrument was signed, sealed and acknowledged in their presence; and, as I understand the record, they prove the same thing on oáth before the court. The act of assembly gives validity to scrolls annexed by way of seal, without specifying the manner in which such annexation shall be proved. It does not require it to be recognized in the body of the deed. Here it is stated by the subscribing witnesses in their attestation, and is moreover proved by their oaths. I am clearly of opinion that the instrument is a good deed.
*521 The case of Maria &c. v. Surbaugh, 2 Rand. 228. is, in my opinion, conclusive of this case; and 1 have nothing to add to the luminous exposition of it, made by the president.
The judgment must be affirmed.

 Cromwell v. Tate’s ex’or, 7 Leigh 301.

 Reported 7 Leigh 301.